IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| ELIZABETH LUTZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ELECTROMED, INC.,<br><br>Defendant. | Civil Action No. _____ |

**NOTICE OF REMOVAL**

Pursuant to Title 28, Section 1441(a) of the United States Code, Defendant Electromed, Inc. ("Electromed") hereby removes this putative class action titled *Elizabeth Lutz v. Electromed, Inc.*, No. 70-CV-21-11814, from the District Court of Scott County to the United States District Court for the District of Minnesota. This Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the putative class contains more than 100 members, minimal diversity exists, and on the face of Plaintiff's pleadings, the maximum amount in controversy exceeds $5 million, exclusive of costs and interest. *See* 28 U.S.C. §§ 1332(d), 1441, 1446, 1453(b). Removal is timely under 28 U.S.C. § 1446(b)(1).

I. **Overview of Claims Asserted and Relief Sought**

1. Plaintiff Elizabeth Lutz's First Amended Class Action Complaint asserts that Electromed, a company that "engages in the development, manufacture, marketing, and

1

sale of medical equipment," Am. Compl. ¶ 20 (attached as part of **Ex. 1**),[1] was subject to a criminal cyberattack in June 2021, *id.* ¶ 1. Plaintiff seeks to bring this putative class action based on this cybersecurity incident, claiming that it resulted in the unauthorized acquisition of certain customer and employee data affecting approximately 47,200 putative class members. *See id.* ¶ 1.

2.      Specifically, Plaintiff contends the incident compromised Electromed's "customers' first and last names, mailing addresses, medical and, health insurance information (collectively, 'Private Information')," *id.* ¶ 3, and occurred due to Electromed's alleged "inadequate safeguarding of Class Members' Private Information that it collected and maintained," *id.* ¶ 4. Plaintiff premises her claims regarding the alleged inadequacy of Electromed's security procedures on the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, *see, e.g.*, Am. Compl. ¶¶ 50–57, and HIPAA, *see, e.g.*, *id.* ¶¶ 63–67. *See also id.* ¶ 68 (citing alleged violations of various statutory provisions of HIPAA and the FTC Act).

3.      Based on this cybersecurity incident, Plaintiff seeks to bring claims against Electromed on behalf of herself, a nationwide class, and a California subclass. *Id.* ¶ 114. In her First Amended Class Action Complaint, Plaintiff defines the nationwide putative class as follows: "All persons Electromed identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach (the

---

[1] **Exhibit 1** is "a copy of all process, pleadings, and orders served" on Electromed. 28 U.S.C. § 1446(a).

'Class')." *Id.* She further defines the California subclass as follows: "All residents of California who Electromed identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach (the 'California Subclass')." *Id.*

4. On behalf of herself and the putative classes, Plaintiff asserts claims for negligence and negligence *per se*. *Id.* ¶¶ 125–45. On behalf of herself and the California subclass, Plaintiff asserts claims under the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56 *et seq.*, Am. Compl. ¶¶ 146–57, and the California Consumer Protection Act ("CCPA"), Cal. Civ. Code § 1798.150, Am. Compl. ¶¶ 158–67.

5. For herself and the putative class and subclass, Plaintiff seeks "an award for actual damages, compensatory damages, statutory damages, and statutory penalties," "an award of attorneys' fees and costs, and other expense, including expert witness fees," "[p]re- and post-judgment interest on any amounts awarded," an order for "Defendant to pay for not less than three years of credit monitoring services for Plaintiff and the Class," and equitable relief, including "restitution and disgorgement of the revenue wrongfully retained as a result of Defendant's wrongful conduct." *Id.* at 36, Prayer for Relief.

## II. Removal is Proper under CAFA

6. This Court has jurisdiction under CAFA because this lawsuit is a purported class action (Am. Compl. ¶¶ 113–24) in which (A) the putative class has 100 or more members, (B) minimal diversity exists, and (C) the amount in controversy exceeds

3

$5 million. *See* 28 U.S.C. § 1332(d)(1)(B) (defining "class action" to include state law class actions); 28 U.S.C. § 1332(d)(2) (granting district courts original jurisdiction over purported class actions in which the amount in controversy exceeds $5 million and "any member of a class of plaintiffs is a citizen of a State different from any defendant"); 28 U.S.C. § 1446 (permitting removal).

### A. The Putative Class Includes More Than 100 Members

7. There is no dispute that the putative class includes more than 100 members. Plaintiff purports to represent all persons whose data was allegedly compromised in Electromed's June 2021 cybersecurity incident, as well as a California subclass of such persons. Am. Compl. ¶ 114. Plaintiff alleges that "the Class consists of approximately 47,200 individuals," and the subclass "consists of more than 500 individuals." *Id.* ¶ 118.

### B. Minimal Diversity Exists

8. For a district court to have jurisdiction of a putative class action under CAFA, minimal diversity must exist. 28 U.S.C. 1332(d)(2). This requires only that "any class member and any defendant are citizens of different states." *Kitchin v. Bridgeton Landfill, LLC*, 3 F.4th 1089, 1092 (8th Cir. 2021). Electromed is a citizen of Minnesota. Am. Compl. ¶ 19 ("Defendant Electromed is a large publicly traded corporation incorporated under the laws of the State of Minnesota with its principal place of business located in New Prague, Minnesota."). Plaintiff is a citizen of California. *Id.* ¶ 17. Minimal diversity is thus plainly satisfied.

### C. Amount in Controversy Exceeds $5,000,000

9. Here, the amount in controversy "exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). Plaintiff is seeking damages for a nationwide putative class of over 47,200 members, plus additional damages for a 500-person subclass. Am. Compl. ¶ 118. For each of these persons, Plaintiff seeks an array of monetary damages, including but not limited to: the costs for three years of credit monitoring services, actual damages, compensatory damages, statutory damages, statutory penalties, attorneys' fees, disgorgement of revenue, restitution, and pre- and post-judgment interest. *See* Am. Compl. at 36, Prayer for Relief. Plaintiff also seeks, under the CMIA, nominal damages of $1,000 and punitive damages of $3,000 per member of the putative subclass. *Id.* ¶ 157 (seeking "relief under Civ. Code §§ 56.35 and 26.36, which allows for actual damages, nominal statutory damages of $1,000, punitive damages of $3,000, injunctive relief, and attorneys' fees, expenses and costs").

10. Although an assortment of damages have been sought, the court need only consider one request to see that CAFA's amount-in-controversy requirement is readily satisfied here.

11. For the putative nationwide class, Plaintiff seeks three years of credit monitoring, as well as compensatory damages for costs Plaintiff and the putative class have incurred in purchasing credit monitoring services. *See* Am. Compl. ¶¶ 106, 110; *id.* at 36, Prayer for Relief. An extremely conservative estimate of the costs of credit monitoring amount to approximately $10 per month per class member for one year of credit

5

monitoring.² This alone amounts to $5,664,000 ($10*47,200*12) for the putative class here. Plaintiff seeks this for three years, putting the amount in controversy for just the costs of credit monitoring to $16,992,000 (without counting the additional compensatory damages Plaintiff seeks for her and the putative class's out-of-pocket monitoring costs).

12. Plaintiff has also sought statutory and punitive damages for the putative California subclass that push the amount in controversy even higher:

    a. Plaintiff seeks statutory damages under the CMIA of $1,000 per person. *See* Am. Compl. ¶ 157. For a 500-person putative class, statutory damages amount to $500,000 under Cal Civ. Code § 56.36(b)(1).

    b. Plaintiff seeks punitive damages under the CMIA of $3,000 per person. *See* Am. Compl. ¶ 157. For a 500-person putative class, punitives amount to $1.5 million under Cal Civ. Code § 56.35.

---

² A review of case law concerning the costs of credit monitoring services show a range of costs from $6.99 to $30 per putative class member per month. *See Porras v. Sprouts Farmers Mkt., LLC*, No. EDCV 16-1005 JGB (KKx), 2016 U.S. Dist. LEXIS 96805, at *7 (C.D. Cal. July 25, 2016) (estimated cost of credit monitoring for 3 years would cost $15.95 per month per class member); *Fielder v. Penn Station, Inc.*, No. 1:12CV2166, 2013 U.S. Dist. LEXIS 63573, at *4 (N.D. Ohio May 3, 2013) (approving defendants' amount-in-controversy calculation which was supported by a declaration which "states that he reviewed the cost of credit monitoring services and they range from $6.99 to $24.00 per month"); *Barel v. Bank of Am.*, 255 F.R.D. 393, 402 (E.D. Pa. 2009) (approving a class-action settlement that provided non-customers, whose credit reports had been improperly accessed by the defendant, with four months of credit monitoring and other relief that amounted to approximately $52 for each class member); *In re TJX Companies Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 400 (D. Mass. 2008) (approving class settlement for victims of retail security breach in which it was estimated that three years of credit monitoring would cost $390); *see also* Vincent R. Johnson, *Credit-Monitoring Damages in Cybersecurity Tort Litigation*, 19 Geo. Mason L. Rev. 113, 116 & nn.18–19 (2011) (noting that "[b]asic credit monitoring is not expensive" and discussing options ranging from approximately $9 per month to $30 per month).

6

c. Plaintiff seeks statutory damages under the CCPA of $750 per person. *See* Am. Compl. ¶ 168. For a 500-person putative class, statutory damages amount to $375,000 under Cal. Civ. Code § 1798.150(a)(1)(A).

13. Total, then, Plaintiff has put into controversy no less than approximately $19,367,000. If the assortment of damages sought amounted to even just $106 per class member, the amount-in-controversy requirement would have been satisfied ($106 * 47,200 = $5,003,200). This requirement has been satisfied more than three (almost four) times over.

14. This is especially so because Plaintiff also seeks disgorgement of profits and attorneys' fees, both of which may be counted and aggregated as part of the amount-in-controversy calculation. *See E-Shops, Corp. v. U.S. Bank Nat'l Ass'n*, No. 10-4822(DSD/JJK), 2011 U.S. Dist. LEXIS 38311, at *5 (D. Minn. Apr. 7, 2011) ("Compensatory damages, punitive damages, injunctive relief, and statutory costs and attorneys' fees may be aggregated to meet the jurisdictional threshold [of CAFA]."); *see also Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017) (considering disgorgement of profits in CAFA amount-in-controversy calculations); *Ahmad v. Panera Bread Co.*, No. 4:21 CV 311 CDP, 2021 U.S. Dist. LEXIS 102984, at *9 (E.D. Mo. June 2, 2021) (same); *Dammann v. Progressive Direct Insurance Co.*, No. 15-3149 (MJD/FLN), 2015 U.S. Dist. LEXIS 174490, at *6-7 (D. Minn. Nov. 20, 2015) (same).

15. In sum, because CAFA requires "the claims of the individual [purported class] members [to] be aggregated," 28 U.S.C. § 1332(d)(6), it is not legally impossible

that the damages at issue in this putative class action exceed $5,000,000 and CAFA's jurisdictional prerequisite is readily satisfied. As the Eighth Circuit has explained, a putative class action "belongs in federal court unless it is *legally impossible* for the plaintiff to recover" the jurisdictional threshold amount of $5 million. *Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 984 (8th Cir. 2019) (quoting *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013)) (emphasis in original). In this way, "[e]ven if it is highly improbable that the Plaintiffs will recover the amounts Defendants have put into controversy, this does not meet the legally impossible standard." *Id.* (citation omitted); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."); *McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 732 (11th Cir. 2014) ("Unless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court." (quoting *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011)).

### III.   The Procedural Requirements for Removal Have Been Satisfied

16.   This notice of removal is timely. A notice of removal must be filed within thirty days of service. 28 U.S.C. § 1446(b). Electromed was served on September 7, 2021. **Ex. 1**. Thirty days from service would be Thursday, October 7, 2021.

17.   Electromed is today timely filing this notice with the District Court of Scott County, Minnesota, along with a Notice of Filing Notice of Removal (attached hereto as **Ex. 2**). Electromed is also today serving those filings on all parties. 28 U.S.C. § 1446(d).

4823-8582-4509 v6

WHEREFORE, Electromed respectfully removes this action from District Court of Scott County, in the State of Minnesota, bearing case number 70-CV-21-11814, to this Court.

Respectfully submitted.

This 6th day of October, 2021.

          **ANTHONY OSTLUND LOUWAGIE DRESSEN BOYLAN P.A.**

          */s/ Daniel Hall*
          Brooke D. Anthony, MN Bar # 0387559
          banthony@anthonyostlund.com
          Daniel Hall, MN Bar # 0392757
          dhall@anthonyostlund.com
          90 South 7th Street, Suite 3600
          Minneapolis, MN 55402
          Tel: (612) 349-6969 | Fax: (612) 349-6996

          Tammy B. Webb (*pro hac vice* forthcoming)
          tbwebb@shb.com
          SHOOK, HARDY & BACON L.L.P.
          555 Mission Street, Suite 2300
          San Francisco, CA 94105
          Tel: (415) 544-1900 | Fax: (415) 391-0281

          Elisabeth A. Hutchinson (*pro hac vice* forthcoming)
          ehutchinson@shb.com
          SHOOK, HARDY & BACON L.L.P.
          1600 17th Street, Suite 450
          Denver, CO 80202
          Phone: (303) 285-5300 | Fax: (303) 285-5301

          *Attorneys for Defendant Electromed, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| ELIZABETH LUTZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ELECTROMED, INC.,<br><br>Defendant. | Civil Action No. _____ |

## CERTIFICATE OF SERVICE

I, Daniel Hall, an attorney, hereby certify that on **October 6, 2021**, I caused a true and correct copy of **NOTICE OF REMOVAL** to be served on all parties of record by U.S. mail and provided a courtesy copy via electronic mail:

>Bryan L. Bleichner (MN 0326689)
>Christopher P. Renz (MN 0313415)
>**CHESTNUT CAMBRONNE PA**
>100 Washington Avenue South, Suite 1700
>Minneapolis, MN 55401
>Phone: (612) 339-7300
>bbleichner@chesnutcambronne.com
>crenz@chestnutcambronne.com
>
>Nathan D. Prosser (MN 0329745)
>**HELLMUTH & JOHNSON, PLLC**
>8050 West 78th Street
>Edina, MN 55439
>Telephone: (952) 941-4005
>nprosser@hjlawfirm.com
>Terence R. Coates *(pro hac vice* forthcoming)
>Dylan J. Gould *(pro hac vice* forthcoming)

4823-8582-4509 v6

**MARKOVITS, STOCK & DEMARCO, LLC**
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
tcoates@msdlegal.com
dgould@msdlegal.com

*Attorneys for Plaintiff*

                                             */s/ Daniel Hall*
                                             MN Bar # 0392757
                                             dhall@anthonyostlund.com

                                             *Attorney for Defendant Electromed, Inc.*