## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

———————————————————————————————————————————

ELIZABETH LUTZ, individually and
on behalf of all others similarly
situated,

     Plaintiff,

     v.

ELECTROMED, INC.,

     Defendant.

Case No. 21-cv-2198 (KMM/DTS)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD TO PLAINTIFF**

———————————————————————————————————————————

## I.    <u>INTRODUCTION</u>

For over two years, Class Counsel[1] have worked diligently on behalf of Plaintiff and the Class in this data breach case against Electromed.  In the successful end, Class Counsel reached a settlement with Electromed for a non-reversionary $825,000 common fund.  This represents an outstanding recovery for the Class.

From the inception of this case until January 31, 2023, Class Counsel have invested more than 493 hours pursuing the claims associated with this data breach.   The docket in this matter is not long; it reflects efficient and concise pleading of claims against Electromed, defining motion practice on Electromed's motion to dismiss, and hard-fought mediation with a skillful retired judge leading to the Settlement.

———————————————

[1] Unless otherwise defined herein, capitalized terms have the same meaning as used in the Settlement Agreement. [*See* Dkt. No. 56, Ex. D., ¶¶ 11-47, 51 n.1.]

Class Counsel respectfully request a Fee Award of $275,000.00, which is one-third (1/3) of the $825,000.00 common fund. Class Counsel have incurred a lodestar of $336,155.50, equating to a negative multiplier of 0.818 from the inception of this case through January 2023. Class Counsel also seek reimbursement for the litigation expenses incurred in the amount of $11,900.53, as well as a $9,900.00 service award for Plaintiff, the court-appointed Class Representative. As discussed below, under either the percentage of the common fund/benefit approach or the lodestar approach, the attorneys' fees, reimbursement of litigation expenses, and service award should be approved as the requests are all well within the range of awards made by judges of this District as well as the Eighth Circuit. This Court should grant Plaintiff's unopposed motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    History of the litigation

Electromed sells and services its airway clearance system to patients with compromised pulmonary functions, and it requires customers to provide sensitive personal and private information to it, including their Social Security number and sensitive medical and health information. [Am. Compl. ¶¶ 20, 21, 27.] Electromed experienced the Data Breach on or about June 16, 2021, which compromised the personal and health information of Plaintiff and members of the Class. [*Id.* ¶ 31.] Plaintiff sued Electromed on September 3, 2021, in the State of Minnesota District Court, Scott County, First Judicial District. Plaintiff alleged damages arising from Electromed's recklessness or negligent maintenance of its computer system and networks. [*Id.* ¶¶ 5, 22-23.] As a

consequence, Plaintiff and the Class have been exposed to a heightened and substantial risk of fraud and identity theft.  [*Id.* ¶ 8.]

In state court, Plaintiff then filed an amended complaint on October 4, 2021, and Electromed thereafter removed the case to the United States District Court for the District of Minnesota on October 6, 2021.  [Dkt. No. 1.]   The Parties stipulated to an extended date for Electromed to respond to the amended complaint, and the Court ordered the response due by November 1, 2021.  [Dkt. No. 13.] Electromed moved to dismiss the complaint on November 11, 2021.  [Dkt. No. 16.] Plaintiff, through Class Counsel, responded to the motion to dismiss on December 16, 2021, and Electromed filed a reply memorandum on January 17, 2021.  [Dkt. Nos. 26, 34.]   A hearing was scheduled for March 1, 2022, before U.S. District Judge Susan R. Nelson.  [Dkt. No. 29.]   The hearing was later rescheduled to May 1, 2022 [Dkt. No. 36], to provide the Parties with time to engage in mediation and possibly an early resolution of the case.

### B.    Following Informal Discovery, Mediated Settlement Negotiations Resulted in a Settlement

The Parties agreed to mediate the case and retained retired Magistrate Judge Morton Denlow of JAMS, who is experienced mediating data breach class actions such as this one.  In preparation for the mediation, the Parties presented Judge Denlow with confidential memoranda on their respective settlement positions, and Class Counsel worked with counsel for Electromed on documents and information about the Data Breach and Class Members for Class Counsel to evaluate claims and defenses.

During the mediation process, the Parties also engaged in pretrial scheduling proceedings with Magistrate Judge David T. Schultz, from which a scheduling order and Order regarding Local Rule 5.6 was issued.  [Dkt. Nos. 40, 41.]

On March 30, 2022, the Parties participated in a full-day mediation session with Judge Denlow.  The mediation was highly contested, with counsel for both sides advancing their respective arguments zealously on behalf of their clients while continuing to demonstrate their willingness to litigate rather than accept a settlement not in the best interests of their clients.  Despite the Parties' mediation efforts, the Parties were unable to reach a settlement.  But good faith, arm's-length, and hard-fought negotiations between the Parties continued during April 2022.  And on May 9, 2022, the Parties advised the Court that a class-action settlement had been reached.  The Parties did not discuss the Fee Award, costs, and expenses prior to agreeing to the essential terms of the Settlement. Electromed denied all charges of wrongdoing or liability to Plaintiff and the Class.

The Court then denied without prejudice Defendant's motion to dismiss, noting that the Settlement had been reached.  [Dkt. No. 47.]   The Parties worked together to finalize the Settlement Agreement, which was executed on September 21 and 22, 2022. [Dkt. No. 56, Ex. D.]  On October 20, 2022, Plaintiff moved for preliminary approval of the Settlement, and the Court granted the unopposed motion on December 2, 2022.  [Dkt. Nos. 49-54, 56.]

## C.    The Settlement Agreement Provides Significant Benefits to the Class

The Settlement resolves and releases all claims asserted by Plaintiff and the Class against Electromed concerning the Data Breach.  The Settlement Agreement notes that

Plaintiff and Class Counsel conducted an adequate investigation of law and fact to

determine the Settlement was fair, reasonable, and adequate, taking into account:

> (1) the existence of complex and contested issues of law and fact; (2) the
> risks inherent in litigation; (3) the likelihood of future proceedings will be
> unduly protracted and expensive if the proceeding is not settled by
> voluntary agreement; (4) the magnitude of benefits derived from the
> contemplated settlement in light of both the maximum potential and likely
> range of recovery obtained through further litigation, and the expense
> thereof; as well as the potential of no recovery whatsoever; and (5)
> Plaintiff's determination that the settlement is fair, reasonable, adequate,
> and will substantially benefits Class Members.

[Dkt. No. 56, Ex. D ¶ 8.]

> The Settlement defines the Class as:

> All persons who were sent notice of the Data Breach.  A California
> Subclass will be created to address their claims under the CMIA.

[*Id.* ¶ 51].  Under the Settlement, Electromed will pay a non-reversionary common fund

of $825,000.00, which includes the Fee Award, Administrative Expenses, Class

Counsel's Litigation Expenses, and Service Award.  [*Id.* ¶¶ 44, 50, 56.]

> The monetary relief available to the Class Members who submit a claim will be a

cash payment $30.00, and each California Subclass Member will receive a cash payment

of $100.00, which does not include the $30.00.  These amounts will be increased or

decreased pro rata after the submission of claims and payment of attorneys' fees,

litigation expenses, and the service award.  [*Id.* ¶ 56(b).]  Class Members may also

receive compensation for unreimbursed losses, up to $250.00 per person, upon

submission of a Claim Form and supporting documentation showing out-of-pocket

expenses incurred as a result of the Data Breach and up to four hours of lost time, at

$25.00/hour, spent mitigating the effects of the Data Breach.  [*Id.* ¶ 56(c)(i)-(ii).]  Class

Members may also receive compensation for extraordinary losses of up to $5,000.00 for

documented monetary loss.  [*Id.* ¶ 56(d).]

Electromed also agreed to injunctive prospective relief and enhancements to

implement or keep in place enhanced information security processes.  [*Id.* ¶ 59.]  These

include subscriptions for a leading network monitoring tool that constantly searches for

suspicious behavior and malware, a global password reset, and multifactor authentication

for administrative accounts and employees with VPN access.  [*Id.*]

In exchange for the consideration above, Plaintiff and Class Members who do not

timely and validly exclude themselves from the Settlement will be deemed to have

released Electromed from claims arising from the Data Breach.  [*Id.* ¶¶ 61-62.]

## III.    **AWARDING ATTORNEYS' FEES TO CLASS COUNSEL IS REASONABLE UNDER GOVERNING LAW**

### A.    **Applicable Legal Standards**

Federal Rule of Civil Procedures 23(h) allows a district court supervising a class

action to "award reasonable attorney's fees and nontaxable costs that are authorized by

law."  Fed. R. Civ. P. 23(h).  The Court has discretion to determine an appropriate

attorneys' fee award in a class action.  *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th

Cir. 2019); *In re Monosodium Glutamate Antitrust Litig.*, No. 00-md-1328 (PAM), 2003

WL 297276, at *1 (D. Minn. Feb. 6, 2003) ("*MSG*") (citing *Blum v. Stetson*, 465 U.S. 886, 896-97 (1984)).

As courts within this District have observed, "[t]he theory behind attorneys' fee awards in class actions is not merely to compensate counsel for their time, but to award counsel for the benefit they brought to the class and take into account the risk undertaken in prosecuting the action." *MSG*, 2003 WL 297276, at *1; s*ee also In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716460, at *4 (D. Minn. Feb. 27, 2013) ("[A] financial incentive is necessary to entice capable attorneys . . . to devote their time to complex, time-consuming cases for which they may never be paid. To make certain that the public interest is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.") (citations omitted).

In exercising their discretion, courts within the Eighth Circuit may base an award of attorneys' fees either under a percentage of the common benefit recovered or the lodestar method. *Rawa*, 934 F.3d at 870. "[T]he 'percentage of the benefit' approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Johnson v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996). "Under the 'lodestar' methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Id.* at 244-45.

B.    **Efficiency in Case Prosecution**

Efficiency in complex civil litigation has long been a focus of judges in this

District handling class action litigation:

> The first observation is a simple one and one in which litigants and their
> counsel in civil litigation, and especially in complex civil litigation, too
> often lose sight. The Federal Rules of Civil Procedure shall be construed
> and administered to ensure the *just, speedy and inexpensive determination*
> of every action. Under Rule 1, as officers of the court, attorneys share the
> responsibility with the court of ensuring that cases are resolved not only
> fairly, but without undue cost or delay.
> All counsel – both those representing plaintiffs and defendants – conducted
> this litigation in an exemplary manner and fulfilled their obligations under
> Rule 1. This is the type of complex litigation that easily could have
> dragged on for several more years. Instead, it had a relatively short stay of
> two and a half years on this court's docket because counsel litigated the
> case efficiently and inexpensively. The lodestar of plaintiffs' counsel
> could easily have been much higher had not counsel cooperated with one
> another through the litigation and settlement process. Instead, all
> plaintiffs' counsel presented a modest lodestar because they moved the
> case along efficiently to a just result in a remarkably short period of time.

*In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 992 (D.

Minn. 2005) (emphasis in original) (citations omitted).[2]  In awarding fees, courts within

this District have time and again struck the efficiency chord:

> There is no question of the quality of lead counsel.  Both they and their
> opposite numbers are exceptionally skilled. While hard-fought, the
> litigation was conducted cordially and efficiently.  It is evident that absent
> counsel's willingness to work efficiently together, this case could well
> have lasted many more months, if not years.

---

[2] Fed. R. Civ. P. 1 provides that the civil rules "should be construed, administered, and
employed by the court and the parties to secure the just, speedy, and inexpensive
determination of every action and proceeding."

*In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1105 (D. Minn. 2009). This theme of efficient case prosecution is a common thread running through other fee precedent in this District. *See*, *e.g.*, *Zurn Pex*, 2013 WL 716460, at *3 ("To a large degree, the settlement and resolution of the complex issues present in this MDL litigation are the result of the diligence and focus of class counsel."); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1063 (D. Minn. 2010) (noting that "Plaintiffs' counsel moved the case along expeditiously, and made every effort to limit duplicative efforts and to minimize the use of judicial resources in the management of the case" and "[c]ounsel exhibited diligence and efficiency throughout the litigation, resulting in a favorable result for the Class").

Indeed, Class Counsel litigated and settled this case in approximately thirteen months following their filing of the initial complaint on September 3, 2021 to the signed Settlement Agreement on September 22, 2022 with a Settlement providing significant benefits to the Class; and it settled within fifteen months from June 6, 2022, when Electromed was hit with ransomware resulting in the Data Breach.

The services provided by Class Counsel are found in detail in the Declaration of Bryan L. Bleichner (Decl.). The highlights are summarized below:

- The law firms of Chestnut Cambronne PA; Hellmuth & Johnson, PLLC; and Markovits, Stock & DeMarco, LLC served as Class Counsel and actively participated in the litigation from the outset to ensure the matter was prosecuted in as efficiently as possible. (Decl. ¶¶ 1, 5.)

- Intensive factual and legal research was undertaken to plead narrow and strong claims in the Complaint based on the chronology and mechanism of the events leading to the Data Breach, including negligence and negligence per se, and claims under California law. (*Id.* ¶ 6.) Class Counsel worked to ensure that

this case was properly distinguished from negative precedent regarding other data breach cases.  (*Id*.)

- The Parties engaged in early informal discovery in conjunction with early mediation discussions in an effort to efficiently resolve the case. (*Id.* ¶¶ 11-12.)

- The Parties negotiated and submitted a joint Rule 26(f) Report, proposing a schedule for formal discovery, motion practice, and trial in order to efficiently and effectively prosecute the litigation. (*Id.* ¶ 13.)

- Class Counsel provided mediation documents to Judge Denlow, and they advocated zealously during the mediation as well as in the weeks of private negotiations after the mediation to reach the Settlement.  (*Id.* ¶ 14.)  The Settlement provides significant relief and benefit to the Class.

Class Counsel's focus and efficiency in achieving resolution bears favorably on the quality of services provided by Class Counsel and the efficient efforts should be rewarded.

**C.    The Fee Requested is Reasonable under the Percentage-of-the-Fund Method**

The Supreme Court has "recognized consistently that . . . a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The Eighth Circuit has upheld the use of a percentage of the fund approach.  *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999).  "In the Eighth Circuit, use of a percentage method of awarding attorney's fees in a common-fund case is not only approved, but also well established."  *Yarrington,* 697 F. Supp. 2d at 1061 (citations and internal quotation marks omitted).  Under the percentage-of-the-benefit method, courts award attorneys' fees equal to a reasonable percentage of the fund

obtained for the class. *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017). "The key issue is whether the desired percentage is reasonable." *Khoday v. Symantec Corp*., No. 11-cv-180, 2016 WL 1637039, at *9 (D. Minn. Apr. 5, 2016) (citing *Petrovic*, 200 F.3d at 1157), *aff'd sub nom.*, *Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017).

The Eighth Circuit has recently reiterated that district courts have discretion to use either the lodestar or percentage-of-the-fund method in determining an appropriate recovery, "and the ultimate reasonableness of the award is evaluated by considering relevant factors from the twelve factors listed in *Johnson v. Georgia Highway Express*, *Inc.*, 488 F.2d 714, 717-20 (5th Cir. 1974)." *Rawa*, 934 F.3d at 870 (quoting *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018)). In several recent cases, this District has most often applied the following *Johnson* factors in determining a reasonable attorneys' fee award:

> (1) the benefit conferred on the class, (2) the risk to which plaintiffs' counsel were exposed, (3) the difficulty and novelty of the legal and factual issues in the case, including whether plaintiffs were assisted by a relevant governmental investigation, (4) the skill of the lawyers, both plaintiffs and defendants, (5) the time and labor involved, including the efficiency in handling the case, (6) the reaction of the class and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases.

*Xcel Energy*, 364 F. Supp. 2d at 993 ("[N]ot all of the individual *Johnson* factors will apply in every case, so the court as wide discretion as to which factors to apply and relative weight to assign to each."); *Yarrington*, 697 F. Supp. 2d at 1062.

Here, the total value of the monetary benefits secured by Class Counsel for the Class is $825,000.00. Class Counsel's attorneys' fee request of 1/3 the total value of the

Settlement Fund is $275,000.00, a request fully supported by the *Johnson* factors. *Xcel Energy*, 364 F. Supp. 2d at 998 (collecting cases supporting that this District routinely approves fee awards of roughly 1/3 the common fund). This fee represents a negative multiplier of 0.818 multiplier on lodestar—meaning the requested fee is less than lodestar—further supporting its reasonableness.[3] Furthermore, Class Counsel will continue to expend significant time and lodestar prosecuting this case through final approval and settlement administration thereafter. The Court should therefore award the requested fee.

### 1.    The Benefit Conferred on the Class

The benefit conferred on the Class is afforded great weight in assessing the reasonableness of a request of attorneys' fee and expenses. *Beaver Cnty. Emps. Ret. Fund v. Tile Shop Holdings*, No. 0:14-cv-786-ADM-TNL, 2017 WL 2588950, at *2 (D. Minn. June 14, 2017) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Here, Class Counsel's significant litigation efforts pushed this case toward an early, positive resolution that benefits a nationwide class of individuals whose personal and private information was impacted by the Data Breach. Through this Settlement, Class Counsel obtained $825,000 in monetary relief and significant non-monetary relief related to Electromed's data security that requires Electromed to implement or continue security measures designed to prevent future data breaches.

---

[3] Class Counsel's lodestar will continue to grow due to the final approval hearing and any issues that arise during the claims process.

The Settlement Fund is non-reversionary, meaning that after deducting the Fee Award and expenses, the Service Award, and Administration Expenses, the entirety of the remaining fund will be distributed to Class Members who submit Claim Forms. If the total value of all timely and valid claims is less than the remaining fund, the value of the payments will be increased on a pro rata basis.

In addition to the Settlement Fund, the non-monetary relief negotiated by Class Counsel offers significant benefits to the Class by requiring Electromed to implement or keep in place enhanced information security processes. These include, but are not limited to, subscriptions for a leading network monitoring tool that constantly searches for suspicious behavior and malware, a global password reset, and multifactor authentication for administrative accounts and employees with VPN access.

Through Class Counsel's vigorous litigation of the claims against Electromed and extensive settlement negotiations, Class Counsel achieved significant monetary and non-monetary relief for Class Members. The substantial benefits to thousands of Class Members supports the requested Fee Award.

### 2.    The Risks to which Class Counsel were Exposed

"Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorneys' fees." *Xcel Energy*, 364 F. Supp. 2d at 994 (citation omitted). Risks "must be assessed as they existed in the morning of the action, not in light of the settlement ultimately achieved at the end of the day." *Id.* (citation omitted). From commencement of this litigation through its eventual Settlement, Class Counsel faced numerous risks.

In agreeing to the Settlement, Class Counsel carefully considered a range of additional risks, including:

> (1) numerous merits issues remained uncertain; (2) the challenges associated with proving damages on a class-wide basis; (3) obtaining 100% of the data for and establishing a damage model and expert testimony that would ultimately be persuasive to a jury; (4) further developments in the law or the factual record of the case that could undermine Electromed's claims; (5) the risk that a jury might award lower damages than what is provided by the Settlement Agreement or no damages at all; (6) the risk both sides faced that a jury could react unfavorably to the evidence presented; and (7) the uncertainties, risks, expense, and significant delays associated with any appeal that would inevitably be pursued following trial and entry of final judgment.

(Decl. ¶ 19.)

Such risks in complex class action litigation are very real.  *See*, *e.g.*, *Xcel Energy*, 364 F. Supp. 2d at 994 (stating that "[t]he risk of no recovery in complex cases of this sort is not merely hypothetical" and that "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy").  As one court aptly remarked, "[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."  *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).

Despite these risks, Class Counsel undertook this litigation on a wholly contingent basis at a time that the application of negligence law to data breach cases is still a developing area of law and recent precedents in similar cases have had mixed outcomes. Some similar cases have ended in settlements, such as *Target, Home Depot*, and *Eddie*

*Bauer*,[4] but others have been dismissed in whole or substantial part, *e.g.*, *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 817-18 (7th Cir. 2018); *SELCO Community Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1297 (D. Colo. 2017), and class certification has been denied in others, *e.g.*, *In re TJX Cos. Retail Securities Breach Litigation*, 246 F.R.D. 389, 395-396 (D. Mass. 2007) (denying class certification because necessity of individualized inquiries regarding causation, comparative negligence, and damages precluded a finding of predominance).

In sum, the contingent nature of the case and the substantial risks involved in this complex litigation strongly support Class Counsel's fee request. *See Blum*, 465 U.S. at 902 (Brennan, J., concurring) ("[T]he risk of not prevailing, and therefore the risk of not recovering any attorney's fees, is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee."); *Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1083 (D. Minn. 2009) ("In the Eighth Circuit, courts must take 'into account any contingency factor' where plaintiffs' counsel assumes a 'high risk of loss.' Plaintiffs' counsel assumed the risk this case would 'produce no fee,' and courts see fit to reward such gambles.") (citations omitted).

---

[4] *See In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522 (PAM), 2016 WL 2757692 (D. Minn. May 12, 2016); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016); *Veridian Credit Union v. Eddie Bauer LLC*, No. 2:17-cv-00356-JLR, 2019 WL 5536824 (W.D. Wash. Oct. 25, 2019).

### 3.    The Difficulty and Novelty of the Legal and Factual Issues

Courts also consider the difficulty and novelty of the legal and factual issues. *See Target Corp.,* 892 F.3d at 977 ("[T]he award was justified by the time and labor required, the difficulty of the matter, the skills necessary to prevail (or to reach the current settlement agreement), and the length of the representation."). This case is no exception. The pursuit of nationwide claims and relief presented complex issues of law and fact. Additionally, the substantial benefits achieved in the Settlement are attributable solely to the efforts of Class Counsel, and the complexity of the factual and legal issues presented by this litigation supports Class Counsel's request for attorneys' fees. *See In re AT&T Corp., Sec. Litig.,* 455 F.3d 160, 173 (3d Cir. 2006) (absence of assistance from any government group supported district court's conclusion that the fee award to class counsel was fair and reasonable); *Dryer v. Nat'l Football League*, No. 09-2182 (PAM/AJB), 2013 WL 5888231, at *3 (D. Minn. Nov. 1, 2013) (approving settlement where "[t]here is no doubt that further litigation in this matter would be both complex and extraordinarily expensive").

### 4.    The Skill of Class Counsel

The skill of the attorneys litigating the case is another factor courts evaluate in determining an appropriate attorneys' fee. *See MSG*, 2003 WL 297276, at *2 (awarding attorneys' fees where "[t]he attorneys prosecuted [the] case very skillfully, often under difficult circumstances"). Class Counsel brought the highest quality skills and efficiency to this litigation. Each firm and attorney has significant complex and class action litigation experience, including in the area of data breach, both in this District and nationally. Class

16

Counsel's experience in prosecuting data breach cases have proven to be critical to the efficient prosecution and ultimate resolution of this case.

Despite the legal and factual hurdles, Class Counsel were able to obtain a settlement affording class-wide relief. *See Xcel Energy,* 364 F. Supp. 3d at 995-96 ("Thus, the effort of counsel in efficiently bringing this case to fair, reasonable and adequate resolution is the best indicator of the experience and ability of the attorneys involved, and this factor supports the court's award . . . ."); *see also Jenkins ex rel. Jenkins v. Missouri*, 127 F.3d 709, 716 (8th Cir. 1997) ("The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole."); *Pentel v. Shepard*, No. 18-CV-1447 (NEB/TNL), 2019 WL 6975448, at *2 (D. Minn. Dec. 20, 2019) (same); *Roth v. Life Time Fitness, Inc*., Civ. No. 16-2476 (JRT), 2019 WL 3283172, at *2 (D. Minn. July 22, 2019) (same). In preliminarily approving the Settlement, the Court designated Class Counsel, finding, that they are "experienced counsel."  [ECF No. 51 ¶ 6.]

The result achieved here is particularly noteworthy considering that the nature of every data breach is different, and some cases have failed at the dismissal or class certification stages.  *See, e.g.*, *SELCO*, 267 F. Supp. 3d at 1292 (dismissing a nationwide class action for a data breach at Noodles & Co, holding Colorado's economic loss rule prohibited tort damages caused by the data breach); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, MDL No. 09-2046, 2012 WL 896256 (S.D. Tex. Mar. 14, 2012) (after three rounds of dismissal motions, dismissing among other claims, negligence), *rev'd sub nom.*, *Lone Star Nat'l Bank N.A. v. Heartland Payment Sys., Inc*.,

729 F.3d 421, 424 (5th Cir. 2013) (concluding that New Jersey's economic loss doctrine could not be applied at dismissal stage); *In re TJX Cos. Retail Sec. Breach Litig.*, 524 F. Supp. 2d 83 (D. Mass. 2007) (dismissing claims for negligence and negligence per se), *aff'd*, 564 F.3d 489 (1st Cir. 2009); *In re TJX*, 246 F.R.D. at 400 (denying class certification because individual issues of reliance, causation, and damages predominated).

This factor further supports Class Counsel's request for attorneys' fees.

### 5.     The Time and Labor Involved, Including the Efficiency in Handling the Case

Class Counsel should be rewarded for moving the litigation along with diligence and extraordinary efficiency. As previously discussed, this case was resolved after a remarkably short eleven-month period of active litigation, providing a significant Settlement less than two years after the data breach. In awarding attorneys' fees, courts have consistently recognized and rewarded class counsel for moving the litigation to conclusion with diligence and efficiency. *See Yarrington*, 697 F. Supp. 2d at 1063. As this District previously reasoned when granting a fee request:

> [P]laintiffs' counsel presented a reasonable lodestar in a case that was not yet ancient, but easily could have become so. But for the cooperation and efficiency of counsel, the lodestar plaintiffs' counsel would have been substantially more and would have required this court to devote significant judicial resources to its management of the case. Instead, counsel moved the case along expeditiously ….

*Xcel Energy*, 364 F. Supp. 2d at 996. This factor, like the others, weighs in favor of approving Class Counsel's fee request.

### 6.   **The Reaction of the Class**

A favorable reaction from the Class also supports the reasonableness of a fee request. *See, e.g., Beaver Cnty. Emps. Ret. Fund*, 2017 WL 2588950, at *3 (noting that the lack of a single class member objection is "strong evidence that the requested amount of fees and expenses is reasonable"); *Yarrington*, 697 F. Supp. 2d at 1064 (concluding "the Settlement Class strongly supports Settlement Class Counsel's request for attorneys' fees of 33% of the Settlement Fund, based on the fact that only one untimely objection was made"); *Xcel Energy*, 364 F. Supp. 2d at 998 (noting notices were mailed to over 265,000 potential class members and concluding that "careful consideration of the merits of the seven [fee] objections and the minuscule number of total objections received in light of the size of the class" supports the fee award).

Notice to the Class has been provided in a manner that complies with this Court's preliminary approval order.  [Dtk. No. 57.]   It was sent prior to the court-established deadline of January 1, 2023, and a reminder notice is due to be sent on February 24, 2023.  (Decl. ¶ 21.)  The date for Class Members to file objections to the Settlement or request for exclusions from the Class is March 2, 2023.  Following completion of notice to the Class pursuant to the Notice Plan approved by the Court in its preliminary approval order and out of 46,405 notices sent, to date no Class Members have requested exclusion, and no Class Member has objected to the fairness, reasonableness, or adequacy of the settlement or award of attorneys' fees, expense reimbursement, or service award to the

Class Representative.[5]  (*Id.*)  The favorable reaction of the class supports the reasonableness of Class Counsel's fee request.

> **7.    The Comparison Between the Requested Attorneys' Fee Percentage and Percentages Awarded in Similar Cases**

The requested attorney fee is within the range of fees previously approved by courts in similar cases.  Class Counsel's request for fees totaling 1/3 of the common fund, in addition to expense reimbursement, falls squarely within the range of percentages deemed reasonable in similar class cases.

Courts in the Eighth Circuit and this District "have frequently awarded attorney fees between [25%] and [36%] of a common fund in other class actions." *Xcel Energy*, 364 F. Supp. 2d at 998 (collecting cases); *see also Rawa*, 934 F.3d at 870 (noting that fees in the Eighth Circuit have ranged up to 36% in class actions); *Khoday*, 2016 WL 1637039, at *9 (awarding a fee award of 33.33% for a total fee award of $20 million from a $60 million common fund); *In re US Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (36% of $3.5 million settlement fund awarded); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. CIV 02-3780 JNE/JJG, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (35.5% of the $15 million settlement fund was "within the range established by other cases"); *Yarrington*, 697 F. Supp. 2d at 1064-65 (33% of $16.5 million common fund was

---

[5] Class Counsel will provide the Court with updated information on any objections and requests for exclusion deadline when they file pleadings regarding the motion for final approval of the Settlement by May 23, 2023.

"certainly within the range established by other cases in this District"). This factor, too, supports Class Counsel's request.

In conclusion, all relevant *Johnson* factors strongly support the requested attorneys' fees.  Under the percentage-of-the-benefit method, the Court should award the requested attorneys' fee of one-third (1/3) the common fund.

### D.     The Fee Requested is Reasonable Under the Lodestar Method

The requested attorneys' fees are also reasonable under the lodestar method.  The lodestar approach may be used as an independent basis for a fee award, *see Zurn Pex*, 2013 WL 716460, at *3-4; as a cross-check in evaluating a fee request under the common fund approach, *see Petrovic*, 200 F.3d at 1157; *Xcel Energy*, 364 F. Supp. 2d at 999; or as a side-by-side analysis alongside the common fund approach, *see MSG*, 2003 WL 297276, at *2-3.  Under the lodestar approach, district courts within this Circuit apply four factors in determining whether requested attorneys' fees are reasonable: "(1) the number of hours counsel expended; (2) counsel's 'reasonable hourly rate'; (3) the contingent nature of success, and (4) the quality of the attorneys' work." *In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d at 1106 (citation omitted); *see also In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017) (noting the lodestar method multiplies the hours expended by a reasonable hourly rate and any adjustment "to reflect the individualized characteristics of a given action") (citation omitted).  Application of these factors is straightforward and supports the reasonableness of Class Counsel's requested fee given the substantial time and resources

Class Counsel devoted to litigating this case. (*See, supra* § II.B (describing significant efforts of counsel in securing an efficient resolution of this matter).)

Courts recognize that "[i]n cases where fees are calculated using the lodestar method, counsel may be entitled to a multiplier to reward them for taking on risk and high-quality work." *In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d at 1106 (using lodestar cross-check and finding appropriate a multiplier of nearly 6.5); *see, e.g., Rawa*, 934 F.3d at 870 (5.3 multiplier was "not unreasonable in light of the results obtained"); *MSG*, 2003 WL 297276, at *3 ("a multiplier of slightly less than 2" is "within the range of multipliers that courts typically use"); *Yarrington*, 697 F. Supp. 2d at 1067 (2.26 multiplier was "modest" and reasonable "given the risk of continued litigation, the high-quality work performed, and the substantial benefit to the Class"); *Dworsky v. Bank Shares Inc.*, No. 3-93-13, 1993 WL 331012, at *2 (D. Minn. May 3, 1993) (approving 2.75 multiplier); *In re St. Paul Travelers Sec. Litig.*, Civ. No. 04-3801 JRT-FLN, 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006) (approving 3.9 multiplier); *Xcel Energy*, 364 F. Supp. 2d at 999 (approving 4.7 multiplier).

Here, in addition to accounting for the requested expenses of $11,900.53 and $9,900 in a service award, Class Counsel's fee request amounts to a request in attorneys' fees of $275,000.00—a *negative* multiplier of 0.818. This multiplier will continue to shrink as time spent implementing the settlement in 2023 is incurred. Considering the skill and efficiency of Class Counsel in bringing this case to a relatively speedy resolution, this multiplier is within the range of multipliers awarded by courts in this District.

Class Counsel will take on the process of distributing the awarded fees to the counsel that have provided valuable services in this matter and intend to continue to exercise responsibility for ensuring that unnecessary expenditures of time and of funds are avoided. This District appropriately expects sound billing judgment and has recognized in other cases that "[o]nly time and expenses authorized and incurred on matters that advance the litigation on behalf of all class members will be considered as compensable." *Dryer v. Nat'l Football League*, No. 09-2182 (PAM/AJB), 2013 WL 1408351, at *6 (D. Minn. Apr. 8, 2013). Class Counsel will carefully evaluate and scrutinize Class Counsels' time and expense reports in allocating any fee and expense award.[6] Just as the Supreme Court has held that the standard for evaluating fee awards is reasonableness, *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), Class Counsel's allocation must be fair and reasonable. The Supreme Court has also cautioned that "[a] request for attorney's fees should not result in a second major litigation." *Id.* at 437. Should the Court award the requested attorneys' fees and expenses in this matter, Class Counsel will award on a fair and reasonable basis applying factors courts consider in

---

[6] Courts recognize that "submission of a combined fee application with actual allocation to be made by lead counsel has generally been adopted by the courts." *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *17 (E.D. Pa. June 2, 2004). "[F]rom the standpoint of judicial economy, leaving allocation to such counsel makes sense because it relieves the Court of the 'difficult task of assessing counsel's relative contributions.'" *Id.* at *18 (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 329 n.96 (3d Cir. 1998)). Courts afford broad discretion to lead counsel in initially allocating attorneys' fee awards. *See In re Indigo Sec. Litig.*, 995 F. Supp. 233, 235 (D. Mass. 1998) (directing that "[a]ny and all allocations of attorneys' fees and expenses among counsel for all class representatives shall be made by lead counsel for the class, who shall apportion the fees and expenses based upon their assessment of the respective contribution to the litigation made by each counsel").

awarding fees in class litigation, including each firm's contribution to the litigation for the benefit of the Class, the risks borne by counsel in litigating this complex case on a contingency fee basis, leadership and other roles assumed, lodestars, the quality of work performed, contributions made, the magnitude and complexity of assignments executed, and the time and effort expended by counsel.

Rates for Class Counsel ranged from $330/hour (Minnesota-based associate attorney) to $1,050/hour (Minnesota-based partner). (Decl. ¶ 24.) These rates are consistent with the rates typically approved in complex litigation in Minnesota and the Eighth Circuit. *See*, *e.g.*, *Tussey v. ABB, Inc.*, 746 F.3d 327, 340-41 (8th Cir. 2014) (approving, in 2014, a "blended rate" of $514 per hour as reasonable in an ERISA class action); *Yarrington*, 697 F. Supp. 2d at 1066 (recognizing, as of 2010, partner rates ranging from $500-$800 "are based on prevailing fees for complex class actions of this type that have been approved by other courts"); *Zurn Pex*, 2013 WL 716460, at *5 (approving $8.5 million fee award based on rates shown in supporting declaration and noting "[t]hese hourly rates are market rates similar to those charged by firms with expertise in class action and other complex litigation"); *Austin v. Metro. Council*, No. 11-cv-03621-DWF-SER, slip op. ¶ 57 (D. Minn. Mar. 27, 2012) (ECF No. 27) (noting that attorney rate of $500 per hour was "at the lower end of complex class action rates approved in this District"); *Xcel Energy*, 364 F. Supp. 2d at 989-90, 1004 (implicitly approving attorney rates ranging from $225-$650 in 2005).[7]

---

[7] In more recent data breach class action cases in other federal jurisdictions, higher hourly rates have been approved. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-

Multiplying the total reasonable hours by the various rates, Class Counsel's lodestar totals $336,155.50.  (*Id.* Ex. D.)

The third and fourth lodestar factors—"the contingent nature of the success" and "the quality of the attorneys' work"—discussed more fully above, further support Class Counsel's attorneys' fee request under a lodestar analysis.

In sum, the requested attorneys' fee is fair and reasonable under the lodestar method and should be awarded. Therefore, under either the percentage-of-the-common benefit or lodestar methods, the Court should approve the requested attorneys' fee as fair and reasonable.

### E.    The Expenses Incurred in this Litigation are Reasonable and should be Reimbursed.

Class Counsel respectfully request that the Court reimburse expenses of $11,900.53 representing Class Counsel's out-of-pocket expenses from inception through January 2023.  (Decl. ¶ 25, Ex. D.)

"The common fund doctrine provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation . . . ." *Zilhaver*, 646 F. Supp. 2d at 1084-85 (citation omitted).  Courts routinely approve expenses incurred in the prosecution of complex cases.  *See*, *e.g.*, *Zurn Pex*, 2013 WL 716460, at *5 (awarding costs and expenses "related and necessary to the prosecution of

---

02617-LKH, 2018 WL 3960068, at *17 (N.D. Cal. Aug. 17, 2018) (approving partner rates of $400-$970/hour; and non-partners, senior attorneys, and associates of $185-$850/hour).

this type of litigation"); *Yarrington*, 697 F. Supp. 2d at 1067-68 (awarding, *inter alia*, filing fees, expenses associated with research, preparation, filing and responding to pleadings, costs associated with copying, uploading and analyzing documents, fees and expenses for experts and mediation fees); *Zilhaver*, 646 F. Supp. 2d at 1085 (awarding "reasonable and necessary" costs and expenses).

The expenses incurred in this litigation were necessary for its efficient but effective prosecution. All expenses have been carefully scrutinized to ensure that they were reasonable and necessarily incurred to benefit the Class. (*Id.* ¶ __.) Therefore, Plaintiff and Class Counsel respectfully request that the Court order the reimbursement of expenses totaling $11,900.53 from the Settlement Fund.

### F.    Awarding a $9,900 Service Award to the Class Representative is Reasonable and Appropriate given Her Service to the Settlement Class

The district court has discretion to award service awards. *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002). Class Counsel have requested that the Court award $9,900.00 to Plaintiff, who was appointed Class Representative and represented other members of the Class in this litigation.

Courts routinely approve such service awards to recognize individuals' service to the class and to reward them for contributing to the enforcement of laws through the class action mechanism. *See*, *e.g.*, *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811 n.7 (2018) (a "class representative may receive a share of the class recovery above and beyond her individual claim"); *Caligiuri*, 855 F.3d at 867 (service awards to named plaintiffs "promote the public policy of encouraging individuals to undertake the

26

responsibility of representative lawsuits") (quoting *Yarrington*, 697 F. Supp. 2d at 1068). Such awards often exceed the one requested here. *See, e.g., Garcia v. Target Corp.*, No. 16-CV-2574-MJD-BRT, 2020 WL 416402, at *2 (D. Minn. Jan. 27, 2020) (approving $10,000 service award as "reasonable in light of the services performed . . . including taking on the risks of litigation, helping to achieve the compensation being made available to the Settlement class, and providing discovery"); *Bhatia v. 3M Co.*, No. 16-1340 (DWF/DTS), 2019 WL 4298061, at *3 (D. Minn. Sept. 11, 2019) (awarding $25,000 service awards to two plaintiffs and $10,000 each to sixteen other class representatives); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522 (PAM), 2016 WL 2757692, at *2 (D. Minn. May 12, 2016) (awarding $20,000 to each of the five financial institution class representatives).

In this case, Ms. Lutz, as Class Representative, stepped up to lead this litigation on behalf of all class members nationally and to provide valuable services for the benefit of the Class. She also worked extensively with Class Counsel to respond to numerous inquiries regarding her individual facts and circumstances as the litigation proceeded. Ms. Lutz also provided extensive information in response to information mediation discovery. She actively monitored the litigation through continuous communication with Class Counsel and was available for mediation and subsequent settlement discussions. (Decl. ¶ 27.)

Because Ms. Lutz devoted time and resources in service to the class, a service award in the amount of $9,900.00 to recognize the time, expense, and valuable contributions to this litigation should be awarded as fair and reasonable.

IV.    <u>**CONCLUSION**</u>

Class Counsel, on behalf of Plaintiff and the Class, respectfully request that the

Court award (1) reasonable attorneys' fees in the amount of $275,000.00; (2)

reimbursement of expenses in the amount of $11,900.53; and (3) a service award to the

Class Representative of $9,900.00.  The requests are fair and reasonable under all

applicable law.

                                          Respectfully Submitted,


Dated: February 16, 2023              *s/Bryan L. Bleichner*
                                      Bryan L. Bleichner (MN 0326689)
                                      Christopher P. Renz (MN 0313415)
                                      **CHESTNUT CAMBRONNE PA**
                                      100 Washington Avenue South, Suite 1700
                                      Minneapolis, MN 55401
                                      Phone: (612) 339-7300
                                      *bbleichner@chesnutcambronne.com*
                                      *crenz@chestnutcambronne.com*

                                      Nathan D. Prosser (MN 0329745)
                                      **HELLMUTH & JOHNSON, PLLC**
                                      8050 West 78th Street
                                      Edina, MN 55439
                                      Phone: (952) 941-4005
                                      *nprosser@hjlawfirm.com*

Terence R. Coates (*pro hac vice*)
Dylan J. Gould (*pro hac vice*)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
*tcoates@msdlegal.com*
*dgould@msdlegal.com*

***Attorneys for Plaintiff and the Class***